IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBIN ZIELINSKI | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PULTE GROUP, INC. d/b/a PULTE HOMES, INC. | : | NO. 10-6761 |
| | : | |

### MEMORANDUM OPINION

**Savage, J.**                                                                                       July 21, 2011

In this gender discrimination action,[1] the plaintiff Robin Zielinski claims she was terminated from her employment with Pulte Services Corporation ("Pulte") because she was pregnant. Moving for summary judgment, Pulte contends that Zielinski cannot make out a *prima facie* case for discrimination because she was not replaced by someone outside her protected class. It also argues that there is no evidence that the decision to fire her was pretext for discrimination. It contends that Zielinski was terminated pursuant to a gender-neutral policy denying leave to all employees who have worked for the company less than one year.

We find that Zielinski has produced sufficient evidence from which a reasonable jury could conclude that Pulte's asserted non-discriminatory reason was pretext for pregnancy discrimination. Therefore, the motion for summary judgment will be denied.

### Background

Zielinski was hired by Pulte as an Assistant Customer Relations Manager on June 30, 2008. In the Fall of 2008, Zielinski informed Harry Pettyjohn, Pulte's Area Construction

---

[1] Zielinski asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 and the Pennsylvania Human Relations Act, 43 P.S. § 951 ("PHRA").

Manager, and Dana Manzo, Pulte's Human Resources Manager for its Delaware Valley Division, that she was pregnant and expected to give birth in 2009. On January 24, 2009, she was admitted to the hospital because she was leaking amniotic fluid. Two days later, Zielinski called Manzo, informing her that she had been admitted to the hospital and her doctor instructed her that she needed to remain on bed rest for the remainder of her pregnancy. Manzo advised Zielinski to complete and return a "Request for Leave" form, which she did that day.

Zielinski gave birth on January 28, 2009. On February 6, 2009, she received a letter from Manzo informing her that she was not eligible for leave under the Family Medical Leave Act ("FMLA") and was terminated as of that day. The letter also stated that "[i]f you are able to work in the future, we encourage you to re-apply for any open positions for which you are qualified and Pulte will consider you for that position." *Termination Ltr.,* Feb. 6, 2009.

## Legal Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In examining the motion, we must view the facts in the light most favorable to the nonmovant and draw all reasonable inferences in her favor. *Conopco, Inc. v. United States*, 572 F.3d 162, 165 (3d Cir. 2009). This standard is applied with "added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 431 (3d Cir. 1997) (quoting *Robinson v. PPG Indus. Inc.,* 23 F.3d 1159, 1162 (7th Cir. 1994)).

The party moving for summary judgment bears the initial burden of demonstrating

that there are no genuine issues of material fact. Fed. R. Civ. P. 56(a). Once the movant has done so, the opposing party cannot rest on the pleadings. To defeat summary judgment, she must come forward with probative evidence establishing the *prima facie* elements of her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which she bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). An inference based upon speculation or conjecture does not create a material fact. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).

In an employment discrimination case, "summary judgment is to be used sparingly." *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 369 (3d Cir. 2008). "[T]he burden of persuasion on summary judgment remains unalterably with the employer as movant." *Id.* at 362. Hence, the employer must persuade the court that even if all of the inferences that could reasonably be drawn from the evidence are considered in the light most favorable to the plaintiff, no reasonable jury could find in her favor. *Id.* (citations omitted).

### Pregnancy Discrimination

Title VII, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) ("PDA"), makes it unlawful for an employer to discriminate against a pregnant employee in taking an employment action. *C.A.R.S. Protection Plus, Inc.*, 527 F.3d at 363-364.[2] An

---

[2] It is an unlawful employment practice for an employer to discharge or otherwise discriminate against any individual "with respect to compensation, terms, conditions or privileges of employment because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a), *et seq.* ("Title VII"). The term "because of sex" includes "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). Under the PDA, women affected by pregnancy "shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." *Id.*

employer cannot fire an employee because she is pregnant. *Id.* at 364. The PDA requires employers to treat pregnant employees the same as non-pregnant employees who are similarly situated with respect to their ability to work. *Id.* (citing *In re: Carnegie Ctr. Assoc.*, 129 F.3d 290, 294 (3d Cir. 1997)). It does not, however, entitle pregnant employees to preferential treatment. *Id*.

A claim of disparate treatment intentional employment discrimination may be proven by either direct evidence of discriminatory intent or indirect evidence from which one can infer an intent to discriminate. *C.A.R.S. Protection Plus*, 527 F.3d at 364. Zielinski does not rely on direct evidence. Instead, she relies upon indirect evidence.

Claims based on indirect evidence are analyzed under the three-step *McDonnell Douglas-Burdine* burden-shifting standard. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The plaintiff must first present enough evidence to make out a *prima facie* case. If she does, the employer must then produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* At the third step, to defeat summary judgment, the plaintiff must show that the employer's proffered reason was merely a pretext for the real reason behind the adverse action, namely intentional discrimination. *Id.* at 364.

In order to make out a *prima facie* case of discrimination under the PDA, the plaintiff must show that: (1) she was pregnant; (2) the employer knew it; (3) she was qualified for her job; (4) she suffered an adverse employment action; and (5) there is a nexus between

4

her pregnancy and the adverse employment action.  *Id.* at 365.[3]

If the employee establishes a *prima facie* case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for its adverse employment decision.  *Id.* at 364.  If the employer is able to do so, the burden shifts back to the employee to show that the proffered reason was a pretext for intentional discrimination.  *Id.*

Claims arising under the PHRA are governed by the same standards set forth in Title VII.  *Jones v. School Dist. of Phila.*, 198 F.3d 403, 409 (3d Cir. 1999).  Thus, the state causes of action rise or fall with the federal ones.

Establishing a *prima facie* case of discrimination under Title VII is not difficult. *C.A.R.S. Protection Plus*, 527 F.3d at 365 (citing *Burdine*, 450 U.S. at 253).  *See also Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006) ("[T]here is a low bar for establishing a *prima facie* case of employment discrimination.").  Here, the only element in dispute is the fifth one - whether there is a nexus between Zielinski's pregnancy and her termination.  Pulte acknowledges that Zielinski was pregnant, it knew she was pregnant, she was qualified for her position, and she suffered an adverse employment action.

Pulte argues that Zielinski cannot satisfy the last element of her *prima facie* case because she was not replaced "by any individual, let alone a non-protected one." It points to undisputed evidence that after she was terminated, her position was left open and her duties were assumed by Gregory Petruska, Pulte's Customer Relations Manager.

---

[3] *C.A.R.S. Protection Plus* speaks of four, rather than five, elements of a pregnancy based discrimination claim.  It apparently combines two elements - pregnancy and knowledge - into one.  We believe each is a separate element.

Pulte's argument rests on an erroneous understanding of the plaintiff's burden at the summary judgment stage. Zielinski need not prove that she was replaced by someone outside her protected class in order to make out a *prima facie* case of gender discrimination. *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 355 (3d Cir. 1999). She only needs to provide evidence "'adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion.'" *Id.* (quoting *Teamsters v. United States,* 431 U.S. 324, 358 (1977)). She may be able to do so even where her replacement was a member of the same class. *Id.* at 353. Her replacement is not an issue.

An inference of discrimination exists if an employer has a "continued need for someone to perform the same work" as the plaintiff after she left. *Id.* at 354 (quoting *Cumpiano v. Banco Santander P.R.,* 902 F.2d 148, 155 (1st Cir. 1990)) (internal quotation omitted); *Lopez v. Alrod Enters.,* 602 F. Supp. 2d 604, 608 (E.D. Pa. 2009) (same). Here, there is evidence that Pulte had a continued need for Zielinski's services after she was terminated. Indeed, it admitted that another employee, Petruska, assumed her responsibilities. *Pulte's Mot. Summ. J.* at 10.

Because there is undisputed evidence that Pulte had a continuing need for Zielinski's services after she was terminated, we conclude that *Zielinski* has made out a *prima facie* case of discrimination.

At the second step of the analysis, Pulte bears the burden of showing a legitimate, nondiscriminatory reason for its actions. This burden is "relatively light." *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir. 1994).

According to Pulte, because Zielinski had worked for the company less than one

year, she was not eligible for leave under the FMLA. Employees who do not qualify under the FMLA are not given leave. Pursuant to the company's policy, Zielinski was fired when she did not report to work on February 6, 2009, the date her accrued vacation and sick days ran out.

On its face, implementation of company policy constitutes a legitimate, non-discriminatory reason for firing her. Whether it was the actual reason is a different question.

At the third step of the *McDonnell-Douglas* test, Zielinski has the burden of presenting evidence that Pulte's proffered reasons for terminating her employment were merely a pretext for discrimination. *Wishkin v. Potter,* 476 F.3d 180, 185 (3d Cir. 2007); *Fuentes*, 32 F.3d at 763. To defeat summary judgment, she must point to some evidence from which a fact finder could reasonably either disbelieve Pulte's legitimate reasons or believe that discrimination was more likely than not the determinative cause of its action. *Wishkin,* 476 F.3d at 185 (citing *Fuentes*, 32 F.3d at 762).

Setting aside the propriety or fairness of Pulte's leave policy as applied to pregnant employees, Zielinski has produced sufficient evidence to disbelieve Pulte's reason for her termination. There is evidence from which a reasonable jury could conclude that Pulte treated non-pregnant employees more favorably. In her affidavit, Zielinski stated that Pulte did not afford her the opportunity to perform her job duties from the hospital. *Zielinski Aff.,* ¶¶ 31, 32. Yet, there is evidence that Pulte had allowed other employees to do work outside the office when they were out for medical reasons.

Pulte had a process for considering requests for accommodations. Michelle Hormozdi, Pulte's Vice President for Human Resources, described how an employee

submits a form request and the company evaluates a number of factors, including the job responsibilities, the length of the proposed accommodation and the costs. *Hormozdi Depo.* at 118. Hormozdi testified that Pulte had previously made "flexible working arrangements . . . to better assist medical concerns" of an employee who had an "adverse impact . . . from medication." *Hormozdi Depo.* at 118. The accommodation in that case lasted for eight months, which Hormozdi characterized as "short-term." *Hormozdi Depo.* at 116. This testimony raises a question of fact as to whether Zielinski received less favorable treatment than other employees because she was pregnant.

There is a dispute as to when Zielinski was actually terminated. Pulte argues she was terminated when she failed to appear at work on February 6, 2009. Zielinski claims that she was not given the opportunity to return to work by February 6. She contends that Manzo fired her over the telephone on January 26, 2009, but she was permitted to extend her official termination date to February 6 so that she could benefit from another month of insurance coverage.

Zielinski's contention that she was not given the same opportunity to return to work as had been given to at least one non-pregnant employee is supported by Hormozdi's testimony. Hormozdi testified that she "believed" Manzo spoke to Zielinski on January 26, 2009. According to Hormozdi, Manzo told Zielinski that her termination date could be pushed back to February "if [she] wanted to use her vacation to bridge her benefits so that . . . she got active benefits for another month." *Hormozdi Depo.* at 166. If Zielinski had elected not to use her vacation time to extend her termination date, she would have been "switched that day to termination and [her] vacation time would be paid out." *Hormozdi Depo.* at 160.

Hormozdi's testimony suggests that Zielinski was given two options. She could be terminated as of January 26, 2009 and be paid for her accrued vacation time; or, in order to ensure another month's worth of medical insurance, she could use her vacation time to extend her termination date to February 6, 2009. Zielinski was not given the option of returning to work before her vacation time was exhausted. Pulte's suggestion that she could reapply for a position later does not guarantee her returning to her job.

## Conclusion

Viewing the facts in the light most favorable to Zielinski and drawing all reasonable inferences in her favor, we conclude there is sufficient evidence from which a jury could find that Pulte discriminated against her because of her pregnancy. Therefore, Pulte's motion for summary judgment will be denied.